# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CASE NO.: 3:09-CR-00012-TBR

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.

JESSE CARNEY, JR.                                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff, United States', Motion to Reconsider Search Warrant Suppression (Docket # 52). Defendant has filed a response (Docket #56). This motion is now ripe for adjudication. For the following reasons, Plaintiff's motion is GRANTED.

## BACKGROUND

On November 21, 2008, investigators received information from Aaron Williams that an individual had used counterfeit currency to purchase a Nintendo Wii. Williams stated that the vehicle driven by the individual was a white Chevy SUV. On December 2, 2008, Williams' mother contacted investigators and told them that the vehicle had been located parked in front of 4902 Saddlebrook Court and the license plate number was 871-JKC. Williams and his mother were both shown a photo-pack line up which did not include Carney. Both identified Jerry King. At the hearing, there was testimony that no witness saw an individual with a Wii enter this apartment building.

On November 28, 2008, an individual attempted to pass counterfeit currency at a Circle K convenience store. The manager of the store, Amy Forsythe, told United States Secret Service Special Agent Ken McNaughton that she was made aware that an individual tried to pass a counterfeit bill after the clerk, William Thompson, noticed the bill and called her to the counter. Forsythe told investigators on December 3, 2008, that the individual took, or snatched, the bill from

her to conceal the evidence of the counterfeit money and fled the store. Testimony at the hearing revealed that the bill was not retained as evidence, nor was the serial number recorded. Forsythe stated that once the individual left the store he drove away in a white Chevy full-size SUV with license plate number 871-JKC. Forsythe pulled the video surveillance of the transaction and provided it to the investigators. On that same date, both Forsythe and Thompson were shown a photo-pack line up with Carney's photo included but without a photo of King. Forsythe identified Carney but Thompson did not.

According to testimony at the hearing, Special Agent McNaughton reviewed the surveillance video from the Circle K and determined that an individual that fit Carney's description was captured on the video. The video showed Thompson and Forsythe interacting with the individual. The video reflects the individual giving the counterfeit twenty dollar bill to the clerk and then taking it back after he is told it is counterfeit. He pays with another bill, immediately leaves the store and drives away in a white Chevy SUV.

Investigators determined the vehicle was registered to Jenny McQuillen who lived at 4902 Saddlebrook Court #1, Louisville, KY 40216. Special Agent McNaughton conducted surveillance of the vehicle and followed it to the Jefferson County Probation and Parole Office. Special Agent McNaughton then confirmed with the Kentucky Department of Probation and Parole that Jesse Carney was driving the white SUV and had stated his residence as 4902 Saddlebrook Court #1, Louisville, KY 40216. The registration of the apartment was not determined.

On December 8, 2008, Special Agent McNaughton, LMPD Detective Steve Glauber and two other officers drove to 4902 Saddlebrook Court #1 and knocked on the door. Carney answered the door. The officers asked for consent to search the home and the vehicle which was denied. The

officers asked Carney questions concerning the transactions which he refused to answer. Carney was placed under arrest on state charges for possession of a forged instrument and tampering with physical evidence. Detective Glauber and Special Agent McNaughton left the scene of the arrest to transport Carney to the Jefferson County Detention Center. Two Secret Service officers were left at the scene to secure the apartment.

While at the scene the officers heard a voice inside the apartment. When asked, Carney stated that there was no one in the apartment and no one had permission to enter the apartment. The officers entered the apartment and arrested the co-defendant, Michael Dewitt. Dewitt was detained on the couch, interviewed, checked for weapons and then released. The officers did not search the apartment at that time.

Detective Glauber wrote the affidavit in order to obtain the search warrant. He used information provided through his own investigation of the Wii situation, as well as information provided to him by Special Agent McNaughton. After the search warrant was obtained it was executed. According to testimony, during the search the officers found a gun in the tank of the toilet in the bathroom, but did not find the counterfeit money. The apartment manager later found the money in the plunger in the bathroom. All of the bills had the same serial number.

On July 21, 2009, Carney moved to exclude this evidence as unlawfully obtained in violation of Fourth Amendment and requested an evidentiary hearing. The United States filed an objection to the motion. A hearing was held on September 2, 2009, where both Special Agent McNaughton and Detective Glauber testified. On October 1, 2009, the Court granted the motion to suppress and held that evidence obtained as a result of the search of the vehicle and apartment pursuant to the search warrant shall be excluded.

The United States now moves the Court to reconsider and reverse its October 1, 2009, Suppression Order.

**DISCUSSION**

The United States asserts that the apartment and the vehicle were sufficiently linked to two separate instances of passing and possessing forged instruments and counterfeit currency thus establishing a sufficient probable cause nexus. The United States also asserts, even if the search warrant were deficient in establishing a probable cause nexus, the good faith exception of *U.S. v. Leon* is applicable. 468 U.S. 897 (1984). Carney maintains there was insufficient probable cause and an insufficient nexus between the alleged criminal activity and the places that were searched: the apartment and vehicle. Carney moves the Court to maintain its prior ruling.

**I. Probable Cause Nexus**

The Court finds it did not err in finding there was no probable cause nexus established between Carney, the vehicle, and the apartment at 4902 Saddlebrook Court #1. As in the Sixth Circuit cases of *McPhearson* and *Savoca*, there must be a nexus between the place to be searched and the evidence sought which is not satisfied by the mere presence of the suspect. *U.S. v. McPhearson*, 469 F.3d 518 (6th Cir. 2006); *U.S. v. Savoca*, 739 F.2d 220, 224 (6th Cir. 1984). While the United States argues that there is are sufficient facts to establish a probable cause nexus beyond the fact that the apartment and SUV belonged to Carney, these facts are no different than the facts previously considered by the Court in its prior ruling. The mere fact that the white SUV with Kentucky plate 871-JKC was parked in front of the apartment building or that Carney listed that as his address is not a sufficient enough link to establish probable cause to search the apartment. Additionally, the use of counterfeit currency by another individual in purchasing a Wii, nearly two

4

weeks prior to the arrest and search, is not a sufficient enough link to establish probable cause.

## II. Good Faith Exception

In *Leon*, the Supreme Court modified the exclusionary rule to establish a good-faith exception. 468 U.S. 897. The Court held that when an officer had an objectively reasonable reliance on a warrant, later found to be lacking in probable cause, the evidence will not be excluded. *Id.* at 922. However, "an officer [cannot] manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 923 (citations omitted). The "so lacking in indicia" test for the applicability of the good faith exception is much less demanding than the "substantial basis" test for determining probable cause. *U.S. v. Washington*, 380 U.S. 236, 240 (6th Cir. 2004). Thus, the Sixth Circuit has held "[the] *Leon* [good faith exception] applicable in cases where [the Court] determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *U.S. v. West*, 520 F.3d 604, 610 (quotations omitted) (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir.2004)). The question for the Court is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *U.S. v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005) (citation omitted).

The Sixth Circuit has addressed the application of the good faith exception in a similar case, *U.S. v. McPhearson*. 469 F.3d 518. In *McPhearson*, investigators went to the home of McPhearson to arrest him on a warrant for simple assault. *McPhearson*, 469 F.3d at 520. The pat-down of McPhearson during the search incident to arrest resulted in a finding of crack cocaine in

5

McPhearson's pocket. *Id.* McPhearson refused to consent to a search of his home and the investigators sought a search warrant based on the finding of crack cocaine on the person of McPhearson. *Id.* at 520-521. The search warrant was issued and fully executed. *Id.* at 521-22. The Court in *McPhearson* held, however, that the search warrant was invalid because the "affidavit failed to establish a nexus between McPhearson's residence and evidence of wrongdoing that would support a finding of probable cause." *Id.* at 526. In *McPhearson*, the mere fact that the defendant possessed illegal drugs did not provide probable cause or establish a nexus that illegal drugs would be found in the home. This failure of a nexus between the residence and the defendant resulted in a bare bones affidavit. *Id.* at 526-527.

The Sixth Circuit held that the good faith exception was not applicable because the connection established in the affidavit could not "establish the minimal nexus that has justified application of the good-faith exception in cases where the nexus between the place to be searched and the evidence to be sought was too weak to establish probable cause." *Id.* at 526 (citing *United States v. Frazier,* 423 F.3d 526, 536-37 (6th Cir.2005); *United States v. Carpenter*, 360 F.3d 591, 595-96 (6th Cir.2004); *United States v. Van Shutters*, 163 F.3d 331, 337-38 (6th Cir.1998); *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir.1994); *Savoca*, 761 F.2d at 298-99). The court explained:

> The application of the good-faith exception in *Frazier*, *Savoca*, and *Van Shutters* depended on the fact that each of the defendants were known to have participated previously in the type of criminal activity that the police were investigating. In *Frazier*, the defendant was a known drug dealer and drugs had been found at his prior residence. 423 F.3d at 537. In *Savoca*, the defendants had been identified as the perpetrators of a string of bank robberies in two states. 761 F.2d at 295-98. Similarly, in *Van Shutters*, the defendant had confessed to perpetrating an auto-theft scheme. 163 F.3d at 336-37. Finally, in *Shultz*, the court found that the minimal nexus was satisfied by the officer's reliance on his years of experience as a narcotics investigator and the knowledge he had acquired of drug dealers' business practices.

6

> 14 F.3d at 1098. Each of these additional facts, although not sufficient to establish probable cause, created the minimal nexus between the place to be searched and the evidence sought that would permit application of the good-faith exception. In this case, there are no analogous facts that establish the minimal nexus. . . . Nor did the affidavit allege anything else tying McPhearson or his home to any criminal activity other than personal possession of crack cocaine (and the simple assault for which he was arrested).

*Id.* at 526-27.

In *U.S. v. Laughton*, the Sixth Circuit similarly reviewed *United States v. Washington*, 380 F.3d 236, 241 (6th Cir.2004); *United States v. Carpenter*, 360 F.3d 591, 595-96 (6th Cir.2004); *United States v. Van Shutters*, 163 F.3d 331, 337-38 (6th Cir.1998); *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir.1994); and *Savoca*, 761 F.2d at 298-99. 409 F.3d 744, 749-750 (6th Cir. 2005). In each of these cases, the court applied the good faith exception and admitted the evidence although probable cause was not established by the warrant at issue. *Id.* In *Laughton*, the court summarized, "[n]otwithstanding *Schultz's* stretch of the limits of good faith, in each of the other cases summarized above, the issuing magistrate-as well as the reviewing court-was able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been, between the criminal activity at issue and the place to be searched." *Id.* at 750.

The facts provided in the affidavit, while not sufficient for probable cause, were not so vague as to be conlsuory or meaningless. *See Carpenter*, 360 F.3d at 598. The affidavit was not totally lacking in facts connecting the vehicle and the apartment to the criminal activity. The affidavit clearly stated that Carney was identified as the individual who was driving the vehicle and presented the counterfeit currency at the Circle K. The affidavit stated that Carney was using the 4902 Saddlebrook Ct. #1 address as his personal address for Kentucky court records and Kentucky Probation and Parole records. Essentially, there was evidence that Carney and Williams attempted

7

or did pass counterfeit money. Both were seen driving the same car immediately after the transactions. The car was parked in front of the address that Carney listed as his address. These facts are sufficient to establish the minimal nexus required for the good faith exception to be applicable; a well-trained officer would not have known the search was illegal, particularly in light of the fact the warrant was presented to and signed by a state circuit court judge. The exclusionary rule will not bar the admission of the evidence found as a result of the search warrant.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED Defendant's Motion is GRANTED; the evidence found as a result of the search warrant is not suppressed.